No. 86-350

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

ALBERT CHARLO,

        Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        William Boggs, Missoula, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Barbara Claassen, Asst. Atty. General, Helena
        Robert L. Deschamps, III, County Attorney; Edward P.
        McLean, Deputy County Atty., Missoula, Montana

Submitted on Briefs: Dec. 4, 1986

Decided: March 31, 1987

Filed: MAR 31 1987

*[signature]*

Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Albert Charlo appeals a jury conviction for aggravated assault in the Fourth Judicial District, Missoula County. On April 7, 1986, Charlo was designated a dangerous offender and sentenced to thirty years in prison for the aggravated assault and use of a dangerous weapon. We affirm the conviction.

Charlo raises two issues for our review:

1. Did the District Court abuse its discretion when it admitted tape-recordings of prior inconsistent statements into evidence?

2. Did the District Court abuse its discretion when it gave the State's jury instruction regarding flight by the defendant?

On the evening of October 3, 1985, appellant Charlo arrived at a Missoula laundromat with his daughter, Beth Charlo, and Beth's boyfriend, Walter (Sonny) Steele. The three of them had been drinking since morning. Over the next hour, they dried clothes and continued to drink. When they left at approximately 9:00 p.m., Beth's car would not start. The owner of the laundromat gave them a jump start, and noticed that Steele attached the battery cables, while Beth sat in her car and Charlo stood beside the car. Several minutes later, Beth came inside and told the owner that Steele had been stabbed. The owner then assisted Steele, and noticed that Charlo was gone.

At the hospital, the surgeon who operated on Steele noted that the stabbing wound punctured both walls of the stomach and was nearly fatal. That same night at the hospital, the police tape-recorded Beth's statements about the incident. In the tape, Beth stated that she saw Steele fall, then get up and say to her, "He just stabbed me." On October

2

24, 1985, while Steele was in the hospital, the police tape-recorded Steele's version of the stabbing incident. In the tape, Steele stated that he saw Charlo take a knife out of his back pocket. Steele also stated, "I knew Albert stabbed me."

## Issue 1

Did the District Court abuse its discretion when it admitted tape-recordings of prior inconsistent statements into evidence?

At trial, both Steele and Beth testified that they did not know who stabbed Steele. Following their testimony, the police officers who tape-recorded their statements testified to the identity and accuracy of the tapes. During the officers' testimony and over Charlo's objections, the District Court admitted Steele's and Beth's tape-recorded statements into evidence. The statements were then played for the court and jury.

Charlo first contends that the prior inconsistent statements were improperly admitted as substantive evidence, because the use of the taped statements violated his right to confront the witnesses as guaranteed by the Sixth Amendment. The Sixth Amendment provides: "In all criminal prosecutions the accused shall enjoy the right . . . to be confronted with the witnesses against him."

Our analysis of this issue is governed by Rule 801(d)(1), M.R.Evid.:

> A statement is <u>not hearsay</u> if: . . . The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony . . . [Emphasis added.]

3

We have held that Rule 801(d)(1)(A) does not require that the prior inconsistent statements be made under oath. State v. Fitzpatrick (1980), 186 Mont. 187, 196, 606 P.2d 1343, 1348. We also have held that prior inconsistent statements admitted under Rule 801(d)(1)(A) can be used as substantive proof in a criminal case. When the witness who made the prior statement is present at trial and subject to cross-examination, the accused's Sixth Amendment right to confrontation is preserved. State v. Pease (Mont. 1986), 724 P.2d 153, 158, 43 St.Rep. 1417, 1423; California v. Green (1970), 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489.

However, before a witness's prior inconsistent statements can be admitted, the witness must either retract or otherwise deny those statements at trial. Both Steele and Beth were asked about their prior statements and given an opportunity to explain the inconsistency. Steele testified that he could not remember who stabbed him:

> Q. Do you think you know who stabbed you?
>
> A. Well, like I said last time, I ain't here to think. I think that's up to the jury.
>
> Q. Well, I'm asking, who do you think stabbed you?
>
> A. I don't know. I never thought about it.

Similarly, Beth's tape-recorded statement is also inconsistent with her trial testimony, where she stated that she could not remember if Charlo stabbed Steele:

> Q. Did you make a statement to any officer at the hospital that, My father, Albert Charlo, stabbed Sonny?
>
> A. Did I ever?

4

Q. Yes.

A. I don't remember.

Q. Did you say it at the hospital?

A. I don't remember.

. . .

Q. Now, Beth, did you father, Albert Charlo, stab Sonny?

A. I don't know.

Q. Did you accuse him of it?

A. I did, but I don't know.

In Pease, we stated that the purpose of the Confrontation Clause is to prevent depositions or expert affidavits from being used against a defendant, instead of placing the witness before the jury and subjecting him to direct and cross-examination. We further stated that, "the Confrontation Clause is not violated by admitting a declarant's out-of-court statements if the declarant is testifying as a witness and subject to full and effective cross-examination." Pease, 724 P.2d at 158, citing Green, 399 U.S. at 157, 90 S.Ct. at 1934-1935, 26 L.Ed.2d at 496-497.

Both Steele and Beth were repeatedly available for observation and cross-examination. Steele took the stand on three separate occasions on three separate days. Beth took the stand twice on two different days. Both witnesses were subjected to cross-examination after the tapes had been admitted into evidence.

Furthermore, the judge specifically told Charlo:

> You can cross-examine Beth Charlo at any time, call her as a witness and cross-examine her about what she said on the tape recording, or you can cross-examine

5

Steele's corroborating testimony placed Charlo near Steele just prior to the stabbing:

Q. Who was standing near you outside? Was anyone around you?

A. Yeah, someone was.

Q. Who?

A. Him.

Q. Who is him?

A. Albert.

Steele's corroborating testimony also describes Beth's reaction and comments to Charlo:

Q. Okay. Now, prior to you getting over to Beth, did you hear Beth say anything to her father?

A. Yeah, I did.

Q. What did you hear her say?

A. I heard her say, What are you going to do, stab me, too?

Thus, the corroborating testimony of three witnesses places Charlo near Steele immediately prior to the stabbing and confirms that Steele was stabbed. The corroborating testimony of one witness places a knife in Charlo's hand.

In summary, we find no merit in Charlo's contention that his right to confront the witnesses was violated by the admission of the tapes. The taped statements of Beth and Steele were played only after they each testified that they did not know who stabbed Steele. Both witnesses were then subject to cross-examination. Furthermore, the prior inconsistent statements were corroborated by their own testimony. We hold that the District Court properly admitted the prior inconsistent statements into evidence.

## Issue 2

Did the District Court abuse its discretion when it gave the State's jury instruction regarding flight by the defendant?

The District Court gave the following instruction to the jury:

> If you are satisfied that the crime charged in the information has been committed by someone, then you may take into consideration any testimony showing, or tending to show, flight by the defendant. This testimony may be considered by the jury as a circumstance tending to prove a consciousness of guilt, but is not sufficient of itself to prove guilt. The weight to be given such circumstance and significance if any, to be attached to it, are matters for the jury to determine.

This instruction was taken verbatim from the Montana Criminal Jury Instructions (1983), published by the State Bar of Montana, and based upon the authority of State v. Walker (1966), 148 Mont. 216, 419 P.2d 300.

Charlo contends that the instruction constituted an improper comment on the evidence. Charlo argues that the instruction should have included a statement about evidence of "lack of flight by the defendant, as a circumstance tending to prove a consciousness of innocence."

Our analysis of this issue begins with § 46-16-401(4), MCA, which states:

> (a) When the evidence is concluded, if either party desires special instructions to be given to the jury, such instructions shall be . . . delivered to the court.
>
> . . .

8

> (b) The instructions shall be settled by the court without the presence of the jury. [Emphasis added.]

Thus, the selection of instructions lies within the discretion of the trial court.

The instruction, as given by the court, was not an improper comment on the evidence. A jury instruction may be given when it is relevant to evidence or issues in a case, and when it is supported either by some evidence or some logical inference from other evidence presented at trial. State v. Kirkaldie (1978), 179 Mont. 283, 292, 587 P.2d 1298, 1304. The jury instruction was supported by the testimony of the laundromat owner, who stated that Charlo was gone when the owner assisted Steele. The instruction was also supported by Beth's testimony that Charlo left the crime scene after Beth discovered Steele's injury:

> Q. Did he stand there? Did he walk away? What did he do?
>
> A. I guess he walked away.
>
> Q. Which way did he walk?
>
> A. I don't know, towards Broadway, I guess.

Furthermore, in his own testimony, Charlo admitted leaving the scene shortly after the stabbing:

> Q. You just stood there?
>
> A. . . . Beth went into the Clean Scene Laundry to call 911. Okay? In the meantime, there was a little building back here with a lot of green stuff on it, and I just moseyed back, or moved, back to the back, passed here (indicating) and finally I went into the shadows of that building.

9

As given, the jury instruction does not comment on the evidence but merely reflects the testimony of three witnesses, including the defendant.

Charlo also contends that the instruction was unfairly weighted in favor of the State. However, we have repeatedly approved instructions regarding flight by a defendant. State v. Shurtliff (1980), 187 Mont. 235, 244, 609 P.2d 303, 308; State v. Gone (1978), 179 Mont. 271, 277, 587 P.2d 1291, 1295. The instruction properly reflects the law in Montana that flight by a defendant may be considered by the jury as a circumstance tending to prove consciousness of guilt. State v. Pierce (1982), 199 Mont. 57, 63, 647 P.2d 847, 851. Furthermore, the instruction is conditioned by the phrase, "may take into consideration any testimony . . . tending to show, flight by the defendant." The phrase is not mandatory and does not shift the burden of proof to the defendant. State v. Goltz (1982), 197 Mont. 361, 371, 642 P.2d 1079, 1085.

The instruction merely told the jury to determine the weight and significance, if any, of the evidence of flight. The instruction plainly states that evidence of flight, "is not sufficient of itself to prove guilt." The instruction accords with our holding in State v. Walker, where we stated: "The evidence is sufficient to support the giving of the [flight] instruction, it was a matter for the jury to accept or reject appellant's reasons . . . It was the jury's task then to weigh the evidence accordingly." Walker, 148 Mont. at 226, 419 P.2d at 306. In contrast, Charlo's proposed instruction was not supported by the evidence and drew an improper inference.

We find no merit in Charlo's contentions. The testimony of three witnesses points to Charlo's departure from the crime scene. In light of such supporting evidence, we hold

10

that the District Court acted within its discretion and properly gave the jury instruction on flight.

We affirm the District Court on both issues.

_J. A. Turnage_
Chief Justice

We concur:

_John Conway Harrison_

_L. C. Gulbrandson_

_John C. Sheehy_

_William E. Hunt Sr._
Justices

11