No.  88-360

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

CHARLES JAY DEVLIN,

Defendant and Appellant.

FILED

DEC 12 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Ray J. Dayton; Knight, Dahood, McLean & Everett,
Anaconda, Montana

For Respondent:

Hon. Marc Racicot, Attorney General; John Paulson,
Assistant Atty. General, Helena, Montana
Robert L. Deschamps, County Attorney, Missoula,
Montana

Submitted on Briefs:  October 24, 1991

Decided:  December 12, 1991

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

On April 24, 1987, the State filed an Information in the Fourth Judicial District Court in Missoula County, charging Charles Jay Devlin with Misdemeanor Assault and Attempted Deliberate Homicide. The incident at issue involved two different victims; the State alleged that Devlin had assaulted his wife Cindy and had tried to kill Dale Hart. The District Court instructed the jury on the charged offenses of Misdemeanor Assault and Attempted Deliberate Homicide, and also instructed on the lesser included offenses of Attempted Mitigated Deliberate Homicide and Aggravated Assault. On January 4, 1988, a jury convicted Devlin on Aggravated Assault, acquitting him on all other charges. Devlin appeals. We affirm.

The issues are:

1. Did the District Court err in admitting Trisha Devlin's prior inconsistent statement?

2. Did the District Court err in admitting photographs of the victim and the crime scene?

3. Does the record contain sufficient evidence to support Devlin's conviction for aggravated assault?

On April 18, 1987, Devlin flew into Missoula from Salt Lake City to visit his wife and children. At that time, he and his wife Cindy had been separated for more than two years. Cindy and the children were not expecting him.

When Devlin arrived, the front door to Cindy's house was open. He went into the house and found his children asleep in the living

room. He then walked down the hall to Cindy's bedroom and found the door locked. He called Cindy's name but received no answer. He used a pocketknife to dismantle the doorknob.

When Devlin entered the bedroom Cindy was passed out on the bed, fully clothed. Devlin smelled alcohol on her breath. Something then drew his attention to the bedroom bathroom. The door was closed, and when Devlin opened it he found the victim, Dale Hart, standing in the bathroom. A struggle followed, and Hart was severely injured.

The noise from this struggle woke up Devlin's 12 year old daughter, Trisha. Trisha walked back to the bedroom and met Devlin coming out of the bathroom. Trisha asked him what had happened and Devlin said, "Your mom's having men around here again." Devlin sat down for a moment. Then Trisha saw him go back into the bathroom, dismantle a wooden bar stool, and beat Hart with one of the stool legs. Hart was fully clothed at the time. Later Trisha saw Devlin take Hart's clothes off and drag him outside.

When the authorities arrived they found Hart naked and semi-conscious on the ground in front of the house. Paramedics found that Hart's teeth did not align correctly and that his mouth was full of blood and other fluids which interfered with his respiration. On arrival at St. Patrick's Hospital, the emergency room staff classified Hart's condition as critical, and one doctor testified that bone fragments were visible through open contusions on Hart's face. Devlin told the authorities he had found Hart in bed with Cindy. He then admitted to assaulting Hart.

3

The jury found Devlin guilty of aggravated assault after a trial in late December 1987. The District Court sentenced him to 15 years at Montana State Prison with five years suspended on conditions. The court designated Devlin as non-dangerous for parole purposes and ordered him to pay restitution.

I

Did the District Court err in admitting Trisha Devlin's prior inconsistent statement?

Shortly after the authorities arrested Devlin, Trisha gave Deputy Sheriff Hafferman a taped statement. She told Hafferman that Devlin said, "Your mom's having men around here again," and that she had seen Devlin beat Hart with the stool leg. At trial, Trisha testified that she could not remember what Devlin said, and that she did not see him actually strike Hart with the stool leg. Trisha acknowledged giving a statement to Deputy Hafferman and testified that she had told the truth when she gave that statement. She also testified that she was having trouble remembering the earlier statement.

The State then attempted to introduce the actual tape recording of the statement through the testimony of Deputy Hafferman. Devlin objected, and the District Court Judge and counsel retired to chambers for argument on the objection. The judge indicated that he thought the tape was probably admissible, but he suggested that the State bring Trisha back to the stand to lay more foundation.

4

When Trisha took the stand again, she repeated that she had told Deputy Hafferman the truth. She again testified that she did not see Devlin strike Hart with the stool leg. The State then proposed to play the tape, and Devlin's counsel responded as follows:

> Your Honor, I will object to that. I believe the proper way to refresh this witness's recollection is to show her a transcript of the tape, let her then make a determination as to whether that refreshes her recollection. I think Mr. McLean is missing a step here by playing that to her in front of the jury.

The District Court sustained this objection. The court also denied the State's request to distribute copies of the transcript to the jury. Neither the tape nor the transcript was ever received into evidence.

The prosecutor then handed Trisha a copy of the transcript of the taped statement and proceeded to read it into the record with Trisha's cooperation. The prosecutor read Deputy Hafferman's original questions and Trisha read her original answers. The defense raised no objection during this entire procedure, but Devlin now argues that the District Court erred in admitting the prior statement. The thrust of this argument is that what the State was really trying to do was refresh Trisha's recollection and that it did not follow the proper procedure for doing so.

We disagree. The Rules of Evidence, as they existed at the time of trial, provided:

> A statement is not hearsay if:
> (1) . . . The declarant testifies at the trial or hearing and is subject to cross-examination concerning the

5

statement, and the statement is (A) inconsistent with his testimony . . . .

Rule 801(d), M.R.Evid. (1987). Declarant Trisha Devlin testified at the trial. She was subjected to cross-examination not once but twice. Her statement was clearly inconsistent with her trial testimony regarding what Devlin said and whether she actually saw him strike Hart with the stool leg.

Furthermore, the prior statement was admissible as substantive evidence. In *State v. Charlo* (1987), 226 Mont. 213, 735 P.2d 278, one declarant testified at trial that he had never thought about who stabbed him. In fact, he had previously given a statement in which he said he knew it was the defendant who had stabbed him. Another declarant testified at trial that she could not remember having accused the defendant of stabbing the victim. She too had previously given a statement in which she accused the defendant. *Charlo*, 735 P.2d at 279. We held that inconsistency within the meaning of Rule 801(d)(1)(A) includes both positive contradictions and claimed lapses of memory. We concluded that the District Court did not err in admitting the statements in that case and we noted that such prior inconsistent statements could serve as substantive evidence. *Charlo*, 735 P.2d at 281.

In the instant case, Trisha's prior inconsistent statement tended to establish two key facts: that Devlin said Cindy had been having men around again, and that he actually beat Hart with the stool leg. At trial, Trisha claimed she could not remember what Devlin had said and she positively contradicted her earlier

6

statement about witnessing the beating with the stool leg. Thus, her trial testimony presented one claimed memory lapse and one positive contradiction. Her prior statement was therefore inconsistent for the reasons we enumerated in *Charlo*, and under the holding in that case it was admissible as substantive evidence.

We hold that the District Court did not err in admitting Trisha Devlin's prior inconsistent statement.

## II

Did the District Court err in admitting photographs of the victim and the crime scene?

In chambers, the parties sought the District Court's advice on a number of 8" x 10" color photographs. Thirteen of these photographs depicted Dale Hart's injuries and 21 of the photographs depicted bloodstains at the scene of the crime. Devlin objected to all of the photographs as "gruesome" and therefore unfairly prejudicial. The District Court Judge explained that he was inclined to exclude three of the photographs of Hart and seven of the photographs of the crime scene. Consequently, the State did not even offer ten of the photographs as the result of informal discouragement by the trial judge. The court then excluded two more photographs when the State offered them in front of the jury. However, Devlin argues that *all* of the photographs should have been excluded.

The Rules of Evidence provide:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger

7

of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Rule 403, M.R.Evid. In *State v. Henry* (1990), 241 Mont. 524, 531, 788 P.2d 316, 320, we noted that the balancing of probative value against unfair prejudice is a matter for the discretion of the trial court.

Here the District Court Judge fully understood the nature of the problem. He told the parties:

> I think they are gruesome, but we're facing a gruesome issue here. We do have blood in the tub and the shower and the condition of the bathroom, and the other one shows the blood on the stool, so I think, although they are gruesome, I would permit them to demonstrate what the situation was.

Furthermore, the court discouraged the submission of ten photographs and actually refused two more. Consequently, nearly one-third of the photographs were never received into evidence as the result of the District Court's balancing of probative value against unfair prejudice.

We hold that the District Court did not err in admitting some of the photographs into evidence.

### III

Does the record contain sufficient evidence to support Devlin's conviction for aggravated assault?

To commit the offense of aggravated assault, the defendant must cause "serious bodily injury" to the victim. Section 45-5-202(1), MCA (1987). A "serious bodily injury" is one "which

8

creates a substantial risk of death." Section 45-2-101(59), MCA (1987).

Devlin argues that the record does not contain sufficient evidence that Hart suffered serious bodily injury. He bases this contention on the following testimony by Dr. David Johnson, one of three doctors who testified at trial:

Q.  Did you make some determination after looking at him as to the severity of his injuries?

A.  I thought his injuries were certainly severe enough to warrant being in the hospital and being observed for a period of time, and furthermore, he was going to require surgery for these facial fractures.

Dr. Johnson did not testify that Hart was at substantial risk of death. Nor did Dr. Norman Nickman, an ear, nose, and throat specialist who treated Hart's facial injuries, express an opinion on the overall impact of the injuries. From this, Devlin concludes that the State did not prove serious bodily injury beyond a reasonable doubt.

However, Dr. Johnson and Dr. Nickman were not the only medical witnesses. Dr. Joseph Weydt, the emergency room physician who first treated Hart upon his arrival at St. Patrick's Hospital, testified as follows:

Q.  Now you've described what you saw initially. Notwithstanding that, what would you describe his medical condition as being at that point in time?

A.  Well, when he came in, if somebody had called and asked, I guess I would have said that he was critical at that moment. That means that he was, that we thought at the time *that he had life-threatening injuries*. [Emphasis added.]

9

Furthermore, paramedic Jay Hagen testified that he believed Hart's situation was "life-threatening."

We review the findings of juries in criminal cases with great deference. In *State v. Paulson* (Mont. 1991), 817 P.2d 1137, 1146, 48 St.Rep. 838, 843, we said that:

> The proper standard of review for sufficiency of the evidence in a criminal case is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Here, one doctor and one paramedic testified that Hart's injuries were life-threatening. The testimony on which Devlin relies does not even address this issue. Based on this evidence, we believe a rational trier of fact could have found beyond a reasonable doubt that Devlin inflicted serious bodily injury on Hart.

We hold that the record contains sufficient evidence to support Devlin's conviction for aggravated assault.

Affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

10