*ERIC WISE V. STATE OF MARYLAND*
Case No. 2206, September Term 2018, Argued, 09/12/2019
Opinion by Harrell, J.

**HEADNOTES**

**EVIDENCE – HEARSAY – PRIOR INCONSISTENT STATEMENTS –
POSITIVE CONTRADICTIONS IN TESTIMONY THAT ARE A RESULT OF
ACTUAL MEMORY LOSS**

The Court of Appeals, in *Nance v. State*, 331 Md. 549 (1993), held that an exception
exists to the bar on the admission of hearsay evidence as substantive evidence when a
witness testifies inconsistently with his or her prior statement. In prosecuting the present
case of the murder of Edward Bruce Thomas, the State introduced into evidence against
Eric Wise a prior written statement of the State's eye witness who testified at trial to a
different narrative of events than he wrote and signed previously during the police
investigation. Complicating the situation, however, was the fact that the witness had
suffered a traumatic brain injury between when he gave the police the written statement
and his in-court testimony. It was established that the injury left the witness with
memory recollection problems. Defense counsel objected to the introduction of the prior
inconsistent statement, arguing that Harris had actual memory loss due to the injury and
*Nance* did not apply in that situation. *See Corbett v. State*, 130 Md. App. 408 (2000).
The trial judge ruled that the prior statement could come in as an inconsistent statement
from the trial testimony, appearing to reject the argument that *Corbett* prevented the entry
of the statement into evidence. The Court of Special Appeals determined that Harris
testified to positive material inconsistencies with his earlier written statement. The prior
inconsistent statement was not barred from entry under *Corbett* as the witness
contradicted directly material aspects of the prior statement, memory difficulties
notwithstanding.

**APPELLATE PROCEDURE – PRESERVATION – MARYLAND RULE 4-323(a)
– PRESERVATION OF OBJECTION MADE *IN LIMINE* AT TRIAL**

The Court of Appeals held that the grounds for not admitting evidence raised in a motion
*in limine* is not preserved for appellate review unless the same objection is renewed at
trial. *Klauenberg v. State*, 355 Md. 528 (1999). Defense counsel here objected at a
pretrial *in limine* hearing to the competency of the State's witness to testify because of his
memory loss/difficulties, but failed to renew expressly the objection at trial when the
witness was offered by the State. Although the defense contended that the objection was
renewed by counsel's reference back to the factual grounds on which the *in limine*
objection was based, the appellate court held the so-called renewal was inadequate as the
references back were not specific enough in nature so as to put the trial court on notice

that the defense was re-asserting incompetency.

Circuit Court for Baltimore City
Case No. 113158001, 03

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2206

September Term, 2018

_____

ERIC WISE

v.

STATE OF MARYLAND

_____

Gould,
*Wright,
Harrell, Glenn T., Jr.
        (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Harrell, J.

_____

Filed:  November 20, 2019

*Wright, Alexander, J., now retired, participated in the hearing of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the preparation of this opinion.

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

"Re-mem-mem
Re-mem-mem-mem-ber
Re-mem-mem
Re-mem-mem-mem-ber
Re-mem-mem
Re-mem-mem-mem-ber
Then, then, remember then."

Refrain from the classic Doo-Wop
song "Remember Then" by
The Earls (1962).

Appellant, Eric Wise, aims his arguments essentially at the State's key witness, Byron Harris, who saw reputedly Wise fleeing the scene of the murder of Edward Bruce Thomas in Baltimore on 17 December 2012. Harris selected Wise's picture from a photo array shown to him by the police on 22 January 2013 as part of their investigation of the murder. On the back of the array, he wrote and signed a narrative of the events he claimed to have witnessed a month earlier. Between then and Wise's trial in 2017, Harris suffered a traumatic brain injury. That injury, it is conceded by the parties, impaired Harris' contemporaneous recall abilities. At an *in limine* hearing, the trial judge found Harris competent to testify, over Wise's objection. At trial, Harris testified, among other things, that he could not recall picking Wise's photo from the array or writing and signing the statement on the back of the array on 22 January 2013, although he identified the signature and handwriting to be his. Harris testified, at another point in the trial, to a contemporaneous recollection of the events leading to Thomas' murder that differed from the written statement on the photo array, conflating apparently the events leading to his July 2015 brain trauma with the previously written narrative of the December 2012 murder

of Thomas. Over Wise's objection, the trial judge allowed the written statement to be read to the jury by Harris under Md. Rule 5-802.1(a) as a prior inconsistent statement from, at least part of, his trial testimony.

A jury in the Circuit Court for Baltimore City convicted Wise of assault in the first degree, use of a firearm in the commission of a crime of violence, and wearing, carrying or transporting a handgun. He was acquitted by the jury of charges of first degree murder, conspiracy to commit murder in the second degree, and assault in the second degree. He was sentenced to 45 years of imprisonment, with all but 10 years suspended, with the first five years to be served without the possibility of parole. The court ordered also three years of probation upon his release from incarceration and recommended commitment to the Patuxent Institution. This timely appeal followed.

Wise complains here that the circuit court erred in admitting the photo array and the written statement (and principally allowing Harris to read aloud the statement) under *Nance v. State*, 331 Md. 549 (1993), later codified as Md. Rule 5-802.1(a), as a prior inconsistent statement because it was established at trial that Harris had actual, rather than feigned, memory loss or difficulty. Further, Wise argues that the court erred in permitting Harris to testify at all, claiming he was incompetent as a result of his memory problems, which problems the court acknowledged initially during the pretrial *in limine* hearing on competency. The State responds that the *Nance* doctrine was applicable because Harris contradicted his earlier written statement in a portion of his trial testimony and that his memory problems are irrelevant. Regarding competency, the State contends that Wise failed to preserve properly a competency objection, as one was made only during the *in*

2

*limine* hearing and not renewed properly at trial.

We shall affirm the judgment of the circuit court.

## FACTUAL BACKGROUND

On 17 December 2012, Thomas was shot and killed in a vestibule off the front porch of a dwelling at 1709 Gwynns Falls Parkway in Baltimore. Harris was living there at the time. A few weeks later, on 22 January 2013, Harris, as a witness to the events surrounding Thomas' murder, went to the police station to aid in the investigation. Apparently, Harris identified a picture of Wise from a photo array and, on the backside of the photo array, wrote and signed a statement detailing his memory of the December 17 incident. That statement read, as Harris narrated it to the jury at trial:

> I came on the front of my porch at 1709 Gwynns Falls and saw Bunk[1] and the defendant talking. I heard Bunk replied to the defendant "all summer you and your boys riding back and forth up Gwynns Falls with yall chests stuck out trying to be someone you're not. What's up with that?" I turned to go back in the vestibule when Bunk ran up on the porch, pushing me to get in the vestibule hallway, and I turned to see the def. and his friend brandishing their guns. The one def. (with the Rick Ross look[2]) had a nine millimeter and the other one I could not see what brand it was but clearly it was a gun in his hand.
> Later I was in my room watching Blade 2 when I heard the gunshots. I ran through my living room to the front window and saw from the back two individuals running off of my porch, grabbed their bicycles, riding up Gwynns Falls, turning onto Woodbrook. The def was one of the guys involved in the shooting of Bunkhouse.

In July of 2015, in an incident not shown to have been related to the murder of

---

[1] Thomas' nickname, according to Harris, was "Bunk" or "Bunkhouse."
[2] It is established elsewhere in the record that this reference was to Wise.

Thomas, Harris was the victim of a robbery attempt, during which he sustained a blow to the back of the head. The blow resulted in a severe brain injury and required that Harris undergo surgery. A sequela of the injury was that Harris suffered thereafter from problems with his memory. According to his own words at trial, "[a] lot of things I'm supposed to remember, I don't remember."

Prior to Wise's trial, the court held a hearing on 13 September 2017 to consider whether Harris was competent to testify as a State's witness. Wise moved to preclude Harris from testifying, claiming the brain injury inhibited his ability to remember accurately the incident, thus rendering him incompetent. Medical records were provided expressing a conclusion that Harris had "moderate difficulty with memory." Harris' testimony at the hearing was all over the place, to put it mildly. As a beta-test of his mental inhibitions, Harris was asked what the current date was; he misidentified both the exact date and the year.[3] Nonetheless, the court ruled that Wise failed to meet his burden to establish that Harris was incompetent to testify at trial.

The problem with Harris' recall faculties had not dissipated by the time he took the witness stand at the September 2017 trial. Under questioning by the State, Harris continued to struggle to remember the day of Thomas' shooting:

[State]: Was there a shooting at your house?
[Harris]: I couldn't really tell you.
[State]: Now I believe you said a little while ago that you heard shots.
[Harris]: I don't know. You got to understand something.

---

[3] The date of the hearing was 13 September 2017. Harris testified that the date was 17 September 2007. Although objectively not the same date, properly identifying the month and only missing the date and the year by a few digits were before the trial judge as she considered his competency as a witness.

4

[State]: Yes, sir.

[Harris]: I been having blackouts. I have been, I have been operated on my skull where as though at times I tend to forget things.

\* \* \*

[State]: Tell me what kind of memory problems you have.

[Harris]: It get to the point where as though I just be forgetting things. Since my injury, I just forget a lot of things.

\* \* \*

[State]: So you don't remember hearing shots at some point on the block?

[Harris]: I couldn't tell you. Even if I did I couldn't tell you. I be forgetting a lot of things since, like I said, since I had this surgery done to my head I been forgetting a lot of things.

Yet, crucially, when asked elsewhere (again by the State) to describe the events of the day of Thomas' murder, Harris provided a narrative of what he claimed to remember. His testimony conflated apparently the day he was robbed and beaten and the day of Thomas' murder, incidents that occurred nearly three years apart; nonetheless, he did testify to a scenario of the murder that differed from the statement it was claimed that he wrote as part of the police investigation of the murder:

[State]: When you went to the bar, do you recall when that was, what month, what year?

[Harris]: Well that day he got killed, I was, I was already going down, like I said, I was going down to the bar. So I went down there, I went down there to get me something, I don't remember what I went and got, but I went down to the bar and got me something and that's when I heard the shots, the police was all up there in front of my house.

\* \* \*

[State]: Now let's talk about the day when somebody got shot. What do you remember about that day?

[Harris]: Ain't too much to remember. I didn't even know somebody had got, up in my hallway, I didn't know anybody got shot until somebody had told

me out there on the front.

\* \* \*

[State]: Mr. Harris, you said that on the night that you were robbed you went to the bar, is that right?
[Harris]: Uh-huh.
[State]: Okay. Now and you're, I believe you said that you also went to the bar, or did you go to the bar on the night of the shooting?
[Harris]: Yeah, I was at the bar.
[State]: So we're talking about two different times, is that accurate?
[Harris]: No. That night when the shooting occurred, I was already down at the bar, I was down this way. I wasn't up there where I lived at.
[State]: Okay, but we are talking about you being at the bar on two different dates?
[Harris]: No, we talking about the day he got shot. I was down there at the bar, I wasn't up there at my house.

Harris testified also, contrary to the statement on the back of the photo array,

that he had never seen Thomas arguing with anyone:

[State]: Well was he ever in the presence of other people when you were with him?
[Harris]: I couldn't really say?
[State]: Why can't you say?
[Harris]: Because when I come downstairs Bunk would be on the front of the porch or he'd be down the street.
[State]: Did you ever see him arguing with anybody?
[Harris]: No, I never.
[State]: Never?
[Harris]: Eh-eh.

When shown the photo array on which it appeared he identified Wise, and wrote,

on the back, a narrative of the events of 17 December 2012, Harris stated he did not

6

remember seeing the array before nor did he recall writing the statement on the back.[4] He did recognize, however, his signature above the photograph of Wise on the front and acknowledged that the statement on the back was his handwriting. Following this acknowledgement, the State moved to enter the photo array, and the statements contained thereon, into evidence under the prior inconsistent statement exception to the hearsay rule. Wise objected. After a lengthy bench conference, the court ruled that the photo array would be received into evidence. Harris was permitted to read the written statement aloud to the jury.

The State relied heavily on the statement on the back of the photo array in arguing their case to the jury. No other State's evidence tied clearly Wise to the murder.

**QUESTION PRESENTED**

Wise presents the following questions, which we have rephrased[5]:

I.     Did the trial court err in admitting the photo array and Harris's handwritten statement as a prior inconsistent statement under *Nance v. State*, 331 Md. 549 (1993)?

II.    Did the trial court err in ruling that Harris was competent to testify?

---

[4] Detective Robert Burns, one of the two detectives who took Harris' statement, testified at trial that he was present when Harris considered the photo array. Detective Burns testified that Harris, while in the detectives' presence, identified Wise on the front of the photo array, signed and dated the front, and wrote the statement on the back.

[5] Appellant's questions were stated thusly:

1. Did the trial court err in admitting the photo array and Mr. Harris's handwritten statement as a prior inconsistent statement under the *Nance* doctrine that provides that inconsistency can be implied from a witness who feigns memory loss, even though Mr. Harris suffered from actual memory loss?

2. Did the trial court err in ruling that Mr. Harris was competent to testify despite his insufficient capacity during his competency hearing to recall the events he allegedly witnessed?

7

## STANDARD OF REVIEW

This Court analyzes without deference the trial court's ruling on the admissibility of evidence under a hearsay exception. *Gordon v. State*, 431 Md. 527 (2013). "[A] circuit court has no discretion to admit hearsay in the absence of a provision providing for its admissibility. Whether evidence is hearsay is an issue of law reviewed *de novo*." *Bernadyn v. State*, 390 Md. 1, 7-8 (2005). We review, however, factual findings made by the trial court supporting the hearsay ruling with significant deference and will not disturb the findings "absent clear error." *Gordon*, 431 Md. at 538.

## DISCUSSION

### I.    Prior Inconsistent Statement

Wise's main challenge to the trial court's ruling is that the prior inconsistent statement exception to the hearsay rule, recognized in *Nance v. State*, 331 Md. 549 (1993) and adopted as Md. Rule 5-802.1(a), does not extend to situations where the testifying witness has actual, rather than feigned, memory loss. *See Corbett v. State*, 130 Md. App. 408 (2000). As Harris' memory impairment was established as a matter of fact, his trial testimony cannot be inconsistent with a prior written statement. Thus, the court should not have allowed Harris' written statement on the back of the photo array to be read to the jury as substantive evidence of Wise's guilt.

Wise claims that the *Nance* rule is meant to address exclusively "turncoat" witnesses who repudiate on the witness stand their prior statement or feign forgetfulness at trial,

8

rather than witnesses suffering from actual memory loss. Focusing on *Nance*'s determination that "there was evidence from which the jury could infer that the witnesses had made truthful identifications out of court, only to become disingenuous at trial," Wise argues that Harris' actual memory loss removes him from the ambit of this hearsay exception. *Nance*, 331 Md. at 558.

Hearsay, an out-of-court statement offered to prove the truth of the matter asserted, is not admissible as substantive evidence unless it is embraced by a recognized exception. Md. Rule 5-802. Although, before *Nance*, prior statements made by a witness that were inconsistent with in-court testimony were only admissible to impeach the credibility of the witness, Maryland adopted in *Nance* the modern rule that these inconsistent statements may be admitted as substantive evidence under certain circumstances. *Nance*, 331 Md. at 569. The *Nance* holding was codified as Md. Rule 5-802.1(a), which provides that, so long as certain procedural steps are taken to ensure the validity of the prior statement, the statement may be admitted as substantive evidence if the witness is subject to cross-examination. *Nance* envisioned two ways a court may find a prior statement inconsistent. "Inconsistency includes both positive contradictions and claimed lapse of memory." *Nance*, 331 Md. at 564 n.5 (citing *State v. Devlin,* 251 Mont. 278 (1991)). As to the latter situation, the Court stated that "[w]hen a witness's claim of lack of memory amounts to deliberate evasion, inconsistency is implied." *Id.* (citing *People v. Johnson*, 3 Cal. 4th 1183 (1992)).

Wise argues that, of the two forms of inconsistency identified in *Nance*, the implied inconsistency category was what the trial court purported to apply in admitting Harris'

9

prior statement. Wise highlights that the trial judge said she was admitting the written statement on the photo array "based on the witness' lack of memory," and that she "thought he testified consistently, but he lacks a memory." As a result, Wise maintains that the written statement should not have been admitted as Maryland does not allow for inconsistency to be implied based on an actual, organic lack of memory. *Corbett*, 130 Md. App. at 421 (holding that when the witness testified that she did not remember what occurred on the day in question, there could not be an implied inconsistency); *see also People v. Simmons*, 123 Cal. App. 3d 677 (1981) (relied on by the *Corbett* court; the California court held similarly that the "testimony of a witness to the effect he does not remember an event is not 'inconsistent' with a prior statement by him describing that event.").

The State cedes Wise's contention that inconsistent statements are not implied from situations of actual memory loss when the witness testifies truthfully to a lack of memory. That notwithstanding, the State focuses on the other form of *Nance* inconsistency, positive contradiction. Although Harris' testimony demonstrated obviously some memory loss or difficulty—Harris claimed to not remember talking to the police, signing the photo array, or writing the statement on the back of said array—the State contends that he testified also in ways that were inconsistent directly with the written statement on the photo array. If that argument carries the day, *Corbett* does not apply because *Corbett* is applicable only when the witness testifies exclusively that he or she *does not remember* the incident in question. Here, Harris testified to a loss of memory (or difficulty in remembering certain things) and, alternatively, a narrative of the day in question different in certain respects

10

than the one he wrote apparently on the back of the photo array.

It is established in Maryland that if there is a prior inconsistent statement that is contradicted positively on the witness stand, then the pretrial statement may come into evidence regardless of the reason for the inconsistencies. *McClain v. State*, 425 Md., 238 (2012) ("Unlike the witness in *Corbett*, Billings did not assert an inability to remember the events surrounding the shooting; moreover, the 'cold record' itself demonstrates the inconsistency between Billings's initial testimony and her prior audiotaped statement."); *Makell v. State*, 104 Md. App. 334, 345 (1995) ("Neither the *Nance* opinion specifically nor the mainstream of American law that *Nance* deliberately joined care one whit why the testimonial inconsistency comes about."); *Adams v. State*, 165 Md. App. 352, 368 (2005) ("Why Leon Wilkerson changed his position between November 14 and May 21 is, of course, not controlling. It is the change itself that triggers the rule of *Nance* . . . .").

Examining this record, we agree with the trial judge's determination that Harris did testify inconsistently with what was written on the back of the photo array. At trial, Harris testified that, "the day [Thomas] got shot. I was down there at the bar, I wasn't up there at my house," and "I went down the bar and got me something and that's when I heard the shots, the police was all up there in front of my house." Yet, Harris wrote on the back of the photo array apparently that he was in his living room at the time of the shooting, at which point he ran to the window and glimpsed the suspects fleeing the scene. Comparison of these statements evinces a patent and material inconsistency as Harris could not have experienced physically the shooting if he was "down . . . at the bar" when Thomas was shot. Further, Harris testified that he had never witnessed Thomas engage in an argument

11

with another person, whereas the photo array stated that he saw Thomas and Wise talking in a hostile manner prior to the murder. Defense counsel acknowledged also in Harris' trial testimony that "[h]e testified both, I mean he testified to many different things, Your Honor . . . he both testified that he had heard shots, hadn't heard shots. That he was at the bar, that he wasn't at the bar."

This case is distinguished from *Corbett*. In *Corbett*, the witness testified that she did not remember the inciting incident, stating that "[s]omething just happened." *Corbett*, 130 Md. App. at 413. Here, although Harris testified to having memory issues and not remembering writing the statement on the photo array, when asked again about the day of the shooting he did not profess a lack of knowledge; instead Harris provided testimony of what he then believed occurred on 17 December 2012.[6] It is this difference, claiming an honest lack of memory on one hand versus providing nonetheless a narrative and responsive answer to what he recollected, despite his memory loss or difficulty, that distinguishes the present case from *Corbett*.

Wise argues that, for contemporaneous testimony to qualify as a positive contradiction of a prior statement, the testimony must refute directly material facts from those claimed previously, considered from the perspective of the elements of the crimes for which he was on trial. Wise maintains that there is no positive contradiction here because Harris was not asked (and did not volunteer) in his trial testimony whether he

---

[6] The trial judge acknowledged also this distinction between the witness in *Corbett* and Harris' testimony, stating "I think his testimony, as I recall it, is mixed. I don't think he testifies during the course of his testimony that he doesn't recall."

12

witnessed specific events, i.e. Wise brandishing a weapon or arguing with Thomas, on 17 December 2012, as narrated on the back of the photo array. Rather, he gave a broad narrative of what he purported to recall he experienced on the day of the crime. Wise argues that, absent the direct refutation at trial of the highlighted specific material statements written on the photo array, there is no positive contradiction.[7] We decline to adopt so sharp an analysis of what may constitute a positive contradiction or contradictions. What we do say on this record is that, if a witness tells a story that is impossible to square factually with a prior statement he or she has given, that is enough to satisfy the *Nance* rule. The rigidity inherent in Wise's interpretation would make application of the *Nance* rule nearly impossible.

We do not, however, define loosely the quality of contradiction required in order to be deemed a "positive" one, for fear of tipping the scale entirely in favor of the State's ability to use *Nance* beyond what we perceive to be its intended bounds. If the slightest contradiction between a prior statement and trial testimony could permit wholesale admission of the prior statement as a hearsay exception, the prosecution would be granted a degree of carte blanche not justified by the case law or Rule 5-802.1(a). Thus, although we are not willing to narrow *Nance* to the extent Appellant wishes us to, neither are we willing to expand it to be so open-ended as to permit just any inconsistency between prior

---

[7] In his reply brief, Appellant states "for there to be a positive contradiction between Mr. Harris's handwritten statement saying he saw Appellant brandish the gun causing the victim to push past him into the vestibule, Mr. Harris would have had to testify that he never saw Appellant brandish the gun, never saw the victim push past him, or that someone else committed the assault."

13

statements and testimony to qualify for admission of the former. Inconsistency as to peripheral or immaterial matters will not satisfy *Nance*. The contradiction(s) must be material. For example, had Harris testified that, rather than watching *Blade 2* on his television on 17 December 2012, he was watching *Dracula*, the inconsistency would not be material and *Nance* would not be satisfied. Here, Harris' prior written statement claimed he witnessed Wise fleeing the scene of the charged crimes; however, he testified that he was not at home at the time of the crime and, ergo, could not have witnessed Wise fleeing the scene. This inconsistency was material as it related directly to the criminal charges for which he was being tried and, thus, is a positive contradiction under *Nance*. This squares with our analysis of *Corbett* as well, as the witness in *Corbett* testified only to peripheral events regarding the crime[8] and thus her testimony, even if it had been contradictory to the written statement provided to police, could not have been admitted under *Nance*.

Anticipating this holding, Wise pivots to argue alternatively that the trial court did not determine expressly that there was a positive contradiction, but rather admitted the evidence as inconsistent impliedly with Harris' trial testimony. We think this misinterprets the trial court's contextual statements. Although the ebb and flow of discussion at trial between counsel and the court regarding the photo array is not easy to follow, we believe Wise ignores the context and broader picture of the arguments made to the trial judge and her responses. The court acknowledged the inconsistency in Harris' trial testimony, stating

---

[8] The witness in *Corbett* testified to falling asleep on the couch before the incident, calling her mother afterwards, and talking to police, but, even after reading her previous statement, the witness testified that she did not remember the inciting incident. *Corbett*, 755 Md. App. at 409.

14

"[t]oday he said there was a shooting . . . but, I was at the bar when I heard shots. He said he didn't know someone got shot in the hallway until someone told him up there [at his home] that someone had gotten shot." Examining the judge's statement in context, as Wise requests we do, the trial court determined from these contradictions that "the witness lacks specific memories." This determination is meaningless, however, in the legal analysis of the issue. The "why" of the contradiction is irrelevant—all that matters is that there is a material contradiction between the testimony and the prior statement.

A stronger case that Wise makes is in regard to the court's comment at another point in the trial that "I think he's testified consistently, but he lacks a memory." This statement, taken out of context, would appear to favor Wise's argument, as facially this comment may imply that the court found Harris' testimony non-contradictory. Drawing this inference would mean that the evidence was not admitted as a positive contradiction, leaving only the implied inconsistency basis of *Nance* and *Corbett* to justify possible admission. Context, however, is crucial. Following this utterance by the trial court, the judge observed additionally that Harris was testifying consistently with what he had said at the *in limine* hearing and also just prior to a recess during the trial. Amidst the confusing back and forth in the transcript of the trial, it appears to us that this was a "Cool Hand Luke" moment.[9] We perceive that the trial court was not claiming that Harris was testifying consistently with the photo array, but merely was referring here to what Harris had said earlier at the *in limine* hearing and just before a recess in the trial. Earlier in the trial, the judge questioned

---

[9] We refer here to the famous line from the movie, "Cool Hand Luke" (1967), "what we've got here . . . is failure to communicate."

15

defense counsel's assertion that the testimony was consistent when discussing the differing paths Harris' testimony went down, noting that Harris was providing testimony different factually than what was written on the back of the photo array.[10]

Further, the trial judge's statement that she was admitting the evidence based on the witness' lack of memory is of no moment in our analysis of whether the statement was admitted properly under *Nance*. Wistfully, Wise wishes us to draw the inference that because the evidence was admitted due to the witness' lack of memory then it could only have come in under implied inconsistency, rather than positive contradiction. This inference ignores prior decisions by this Court and the Court of Appeals which disregard the "why" of a contradictory statement and focus instead on the mere fact that it is a material contradiction. As a result of clear material contradictions between the written statement on the photo array and the witness' testimony, we find that the trial court did not err in allowing Harris to read to the jury the written statement under *Nance* and Md. Rule

---

[10] The transcript of the exchange between the court and defense counsel states:

[THE COURT]: So the fact that he says I heard the shooting but I didn't see who did the shooting. And he said that twice today and said it once in pretrial hearing doesn't mean anything?
[WISE]: Well he said he, he didn't say he didn't, he said he wasn't there. But he also then said, I mean he has said things that contradict what he said already. And he can't even keep straight --
[THE COURT]: So my question is are you, I know you're arguing it's a memory loss, you don't see that as a contradiction?
[WISE]: No, --
[THE COURT]: Okay.

5-802.1(a).[11]

## II. Witness Competency

Although we hold that Harris testified inconsistently (but not as a recanting witness or feigning memory loss), Wise begs our consideration whether Harris was competent to testify at all. Wise contends that the trial court erred in finding Harris competent after an *in limine* hearing because his memory loss precluded him from having "sufficient capacity to observe, recollect, and recount pertinent facts." *Perry v. State*, 381 Md. 138, 145 (2004). Illustrating that Harris' actual memory loss or impairment was well established, Wise points to a number of instances of Harris' failed memory during trial that established his inability to remember aspects of the night in question and his struggles with memory on the whole.

In response, the State contends that Wise failed to preserve for appellate scrutiny the question of the propriety of the competency ruling by failing to re-assert a timely or proper objection at trial. If preserved, the State argues that a decision as to witness competence is one left largely to the discretion of the trial court and that, although lacking in certain areas here, Harris' memory was sufficient to establish his competence in the eyes of the court. What memory Harris did have was enough for the trial court to determine competency and, perhaps more importantly, that Wise "did not meet its burden and did not

---

[11] "How sharp the point of this remembrance is!" Alonso to Prospero, Act V, Scene I, Line 138, <u>The Tempest</u>, William Shakespeare (1610 or 1611).

17

establish the incompetency of Byron Harris." We hold that the issue has not been preserved and thus is not properly before this Court to decide.

"[W]hen a motion *in limine* to exclude evidence is denied, the issue of admissibility of the evidence that was subject of the motion is not preserved for appellate review unless a contemporaneous objection is made at the time the evidence is later introduced at trial." *Klauenberg v. State*, 355 Md. 528, 539 (1999). Witness testimony is no exception to this broad-reaching rule. *Morton v. State*, 200 Md. App. 529 (2011). Wise argues, however, that there is an exception to this rule that was present here; we may apply this exception when a party is "careful to refer back, in a summary fashion, to the grounds" that had been asserted in the pretrial hearing. *See Walter v. State*, 239 Md. App. 168, 195 n.15 (2018).

There was no clear objection at trial to Harris' testimony on the grounds of competence. Although Wise's counsel raised a number of objections throughout Harris' testimony, none put the issue of competency in play properly. No objections were made while Harris was being sworn or during the State's initial examination. There was no renewal of the *in limine* competency objection in the conventional sense. Thus, Wise is reliant on *Walter* to preserve this challenge on appeal. The context of this record does not support, however, satisfaction of the exception.

Wise argues that, throughout the trial, defense counsel referred to the grounds on which the competency of Harris had been challenged, i.e., his memory impairment made obvious at the pretrial hearing. Relying on *Walter*, Wise claims these recalls and broad references to Harris' faulty memory were enough to renew the *in limine* competency objection and preserve it for the purpose of appeal. We disagree. The *Walter* trial is

18

distinguished from the present one.  Not only did defense counsel in *Walter* object at the time the witness was offered, but counsel also made specific references back to the same objection that was made pretrial.  During the pretrial hearing, counsel in *Walter* objected to the qualifications of the expert witness, as well as the adequacy of the factual basis for her opinion testimony, under Md. Rule 5-702.  During trial, however, *Walter*'s counsel renewed the objection to general qualifications, but not the adequacy of the factual basis for the opinion expressed in the testimony.  Importantly, as part of the objection, counsel referred specifically to Md. Rule 5-702 and the pretrial arguments surrounding it, the legal grounds on which both the expert's qualifications and the adequacy of her testimony's factual basis was challenged previously.  Due to the specific nature of the references and recalls, the intent to renew the objection was clear to the trial judge, even if not stated expressly.

Here, we find no such specificity.  Wise's counsel did not mention at trial *Perry* or the legal reasons for objecting to the competency of Harris.  The mere reference to the lack of memory displayed by Harris is not sufficient to put the court on alert that the earlier challenge to competency was being renewed by reference.  The references back to the pretrial hearing itself do nothing to put the trial court on alert that the objection is being renewed and, in fact, seem to have the opposite effect.  Counsel's statement that "[o]bviously we have heard the pretrial motion that we had and a lot of the competency issues that we raised with this witness" appears to be nothing more than an acceptance of the decision of the court's earlier ruling as to competency, as does another reference made when counsel stated "we did a pretrial motion as to this witness's competency, which I

know has already been ruled upon." Neither of these statements, nor general references to Harris' continuing memory problems, are thoughtful or careful references back to the objection advanced during the pretrial hearing. Thus, the issue was not preserved for appeal.

**JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**