*Eric Wise v. State of Maryland*, No. 73, September Term 2019.  Opinion by Hotten, J.

**CRIMINAL LAW – HEARSAY – PRIOR INCONSISTENT STATEMENT – POSITIVE CONTRADICTION –** *Nance v. State*, 331 Md. 549, 569, 629 A.2d 633, 643 (1993), codified at Md. Rule 5-802.1, admits prior inconsistent statements as an exception to the hearsay rule when the proponent shows both sufficient trustworthiness of the declarant's original statement and an inconsistency with the declarant's testimony.  The Court of Appeals held that a witness's written description of a murder made to police before trial, was admissible under the prior inconsistent exception to the hearsay rule, because the witness offered a contradictory and irreconcilable version of events at trial.  The witness's memory loss, sustained between his prior statement to police and trial testimony, does not necessarily preclude an inconsistency under Md. Rule 5-802.1.  An inconsistency may arise for any reason, including real or feigned memory loss; if it yields a contradiction at trial, the prior statement is admissible

**CRIMINAL LAW – HEARSAY – PRIOR INCONSISTENT STATEMENT – MATERIALITY –** *Nance v. State*, 331 Md. at 569, 629 A.2d at 643, and its progeny never articulated the minimum degree of inconsistency a proponent must demonstrate to qualify for the prior inconsistent statement exception to the hearsay rule.  The Court of Appeals held that a prior inconsistent statement must contain a material inconsistency compared with the declarant's trial testimony.  This conclusion furthers *Nance*'s purpose by admitting prior inconsistent statements only with sufficient substantive and probative value.  Proponents cannot admit an entire prior inconsistent statement predicated on minor or peripheral factual differences in a declarant's testimony.

Circuit Court for Baltimore City
Case Nos. 113158001, 113158003
Argued: September 10, 2020

IN THE COURT OF APPEALS

OF MARYLAND

No. 73

September Term, 2019

_____

ERIC WISE

v.

STATE OF MARYLAND

_____

Barbera, C.J.,
McDonald,
Watts,
Hotten,
Getty,
Booth,
Biran,

JJ.

_____

Opinion by Hotten, J.

_____

Filed: November 24, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

Petitioner, Eric Wise, ("Wise") was tried in the Circuit Court for Baltimore City for the murder of Edward Bruce "Bunkhouse" Thomas. The jury convicted Wise of assault in the first degree, use of a firearm in the commission of a crime of violence, and wearing, carrying or transporting a handgun. The jury acquitted him of the charges of first-degree murder, conspiracy to commit murder in the second degree, and assault in the second degree. The State's case against Wise hinged on the eyewitness testimony of Byron Harris, who described the events leading to the alleged murder in a signed, handwritten statement to the police. Two years later and before trial, Mr. Harris sustained brain damage and memory loss in an unrelated robbery. The memory loss interfered with Mr. Harris's factual recall and he provided a different and contradictory version of events at trial. Wise appealed his convictions to the Court of Special Appeals. He argued that the circuit court erred in admitting Mr. Harris's handwritten statement under the prior inconsistent statement exception to the hearsay rule because Mr. Harris's actual memory loss prevented a finding of inconsistency as a matter of law.[1]

The Court of Special Appeals affirmed the circuit court. Wise timely appealed to this Court. We granted *certiorari* to address the following questions:[2]

---

[1] Wise also appealed the circuit court's finding of Mr. Harris's competency to testify at trial. The Court of Special Appeals dismissed the claim as not adequately preserved for review. *Wise v. State*, 243 Md. App. 257, 277, 220 A.3d 341, 353 (2019). Wise did not reassert the issue before this Court.

[2] In its brief, the State phrased their consolidated question presented as follows:

Was Byron Harris's signed eyewitness statement inculpating Wise properly

(continued . . .)

1. Did [the Court of Special Appeals] err in affirming the admission of a statement by a witness with memory loss as a prior inconsistent statement, in conflict with *Corbett v. State*, 130 Md. App. 408, 746 A.2d 954, [*cert. denied*], 359 Md. 31, 753 A.2d 3 (2000)?

2. Did [the Court of Special Appeals] err in expanding the circumstances under which hearsay is admissible under [Md.] Rule 5-802.1(a) to include statements containing a "material" inconsistency with the witness's testimony?

We answer these questions in the negative and affirm the judgment of the Court of Special Appeals.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Underlying Incident

On December 17, 2012, Byron Harris observed his friend, Edward Bruce "Bunkhouse" Thomas engaged in an argument with Wise on the front porch of Mr. Harris' rowhouse in Baltimore, Maryland. Mr. Thomas ran into the house while pushing inside Mr. Harris, who turned to see Wise and another man each brandishing a pistol. Later while watching the movie *Blade II*[3] in his bedroom, Mr. Harris heard two gunshots outside. He ran to his front window and saw, from behind, two individuals run away from the front porch and flee on their bicycles. They headed down Gwynns Falls Parkway, turned the

---

(. . . continued)

    admitted as a prior inconsistent statement under Maryland Rule 5-802.1(a) where Harris's testimony at trial positively and materially contradicted his prior statement, regardless of the reason for the inconsistency?

    [3] "*Blade II* is a 2002 American superhero horror film based on the fictional character Blade from Marvel Comics, directed by Guillermo Del Toro" and staring Wesley Snipes. Wikipedia, the Free Encyclopedia, *Blade II*, https://en.wikipedia.org/wiki/Blade_II (last visited Nov. 17, 2020), archived at https://perma.cc/9TZ7-UC7K.

2

corner onto Woodbrook Avenue, and disappeared from view.  Mr. Thomas, who was outside on Mr. Harris's porch, was shot and died from the gunshot wounds.

Baltimore City Police Homicide Unit Detectives Robert Burns and J.T. Ellsworth invited Mr. Harris on January 22, 2013 to police headquarters to provide information about Mr. Thomas's murder.  The detectives' investigation identified Wise as the primary suspect.  They presented six photos of men who all sported a "Rick Ross beard."[4]  Mr. Harris "immediately identified" Wise's picture from the photo array.  He signed and dated his identification of Wise beneath his picture.  On the back of the photo array, he wrote his recollection of the events leading to the alleged murder:

> I came on the front of my porch at 1709 Gwynns fall And saw bunk And [Wise] talking.  I heard bunk Replied to [Wise, "]All summer you [and] your boys Riding back And forth up Gwynns falls with yall chest stuck out trying to be someone your not[.]  Whats up with that[?"]  I turned to Go back in the [vestibule] when bunk Ran up on the porch pushing me to get in the [vestibule] hallway And i turned to see [Wise] And his friend brandishing their guns.  the one [ ] (with the Rick Ross Look) had a Nine Millimeter and the other one i could not see what brand it was but clearly it was A gun in his hand.  Later i was in my Room watching Blade II when i heard The Gun shots.  i Ran through my Living Room to the front window And saw from the back two individuals Running off of my Porch[,] Grabbed their bicycles[,] Riding up Gwynns falls turning onto Woodbrook.  [Wise] was one of the guys involved in the shooting of bunkHouse.

In an unrelated incident, on July 20, 2015, a man attempted to rob Mr. Harris while he stood outside beside a mailbox.  The man struck Mr. Harris's head with a gun, causing

---

[4] Detective Burns testified that in his investigation, Wise "was always referred to as having a Rick Ross beard."  Rick Ross is a rapper and record executive.  Wikipedia, the Free Encyclopedia, *Rick Ross*, https://en.wikipedia.org/wiki/Rick_Ross (last visited Oct. 28, 2020), archived at https://perma.cc/C5TS-MPWV.

Mr. Harris to sustain a severe brain injury. Mr. Harris underwent emergency brain surgery, resulting in memory loss and some cognitive defects.

**Legal Proceedings**

**A. Circuit Court Proceeding**

Prior to Wise's trial, the circuit court held a hearing on September 13, 2017 to determine Mr. Harris's competency to testify as a State's witness. Mr. Harris disclosed he suffered memory loss and received care from his daughter. Wise admitted medical records that confirmed Mr. Harris experienced "moderate difficulty with memory" and "cognitive defects." The circuit court ruled that Wise failed to show Mr. Harris was incompetent to testify at trial. On September 19, 2017, Mr. Harris rearticulated his memory difficulties during the State's direct examination at trial:

[State]: Was there a shooting at your house?

[Mr. Harris]: I couldn't really tell you.

[State]: Now I believe you said a little while ago that you heard shots.

[Mr. Harris]: I don't know. You got to understand something.

[State]: Yes, sir.

[Mr. Harris]: I been having blackouts. I have been, I have been operated on my skull where as though at times I tend to forget things.
* * *
[State]: [T]ell me what kind of memory problems you have.

[Mr. Harris]: It get to the point where as though I just be forgetting things. Since my injury, I just forget a lot of things.
* * *
[State]: So you don't remember hearing shots at some point on the block?

4

[Mr. Harris]: I couldn't tell you.  Even if I did I couldn't tell you.  I be forgetting a lot of things since, like I said, since I had this surgery done to my head I been forgetting a lot of things.

Despite his admitted memory lapses, Mr. Harris demonstrated his willingness and ability to describe the events leading up to Mr. Thomas's murder.  His description, however, conflated the day of his head trauma with the day of the murder, which resulted in a different account from what he previously described to the police:

[Mr. Harris]: Well that day [Mr. Thomas] got killed, I was, I was already going down, like I said, I was going down to the bar.  So I went down there, I went down there to get me something, I don't remember what I went and got, but I went down the bar and got me something and that's when I heard the shots, the police was all up there in front of my house.

***

[State]: So we're talking about two different times, is that accurate?

[Mr. Harris] No.  That night when the shooting occurred, I was already down at the bar.  I was down this way.  I wasn't up there where I lived at.

[State]: Okay, but we are talking about you being at the bar on two different dates?

[Mr. Harris]: No, we talking about the day he got shot.  I was down there at the bar.  I wasn't up there at my house.

[State] Okay, now so on the day that he got shot, is that the day that you got robbed?

[Mr. Harris]: Yeah, that was the same day I got robbed.  I got robbed earlier before that even happened.

The State next asked Mr. Harris about his interview with police.  Mr. Harris recalled voluntarily accompanying two detectives to police headquarters, and he also recalled answering questions about Mr. Thomas's death.  Mr. Harris neither remembered the content of the conversation, nor recalled providing a signed, handwritten statement to

5

police. Over Wise's objection, the State showed Mr. Harris the photo array with his previously written statement on the back. Mr. Harris again could not remember either the photo array or writing the statement on the back. On the other hand, Mr. Harris recognized his signature above Wise's photograph and the written statement in his own handwriting.

The State moved to enter the photo array and the written statement into evidence under the prior inconsistent statement exception to the hearsay rule. Wise objected, but after an extended bench conference, the court allowed the photo array into evidence. Mr. Harris read the written statement aloud to the jury.

The jury convicted Wise of assault in the first degree, use of a firearm in the commission of a crime of violence, and wearing, carrying or transporting a handgun. The jury acquitted him of charges of first-degree murder, conspiracy to commit murder in the second degree, and assault in the second degree. The court sentenced Wise to forty-five years of imprisonment, with all but ten years suspended, the first five years without the possibility of parole. The court also ordered three years of supervised probation upon his release from incarceration. Wise initiated a timely appeal before the Court of Special Appeals.

## B. Opinion of the Court of Special Appeals

The Court of Special Appeals affirmed the circuit court's admission of Mr. Harris's signed, written statement under Maryland's prior inconsistent statement exception to the hearsay rule. It agreed with the State that Mr. Harris's conflicting testimony created a material contradiction, and that the reason for the contradiction, memory loss or otherwise,

6

does not factor into the legal analysis. *Wise*, 243 Md. App. at 274, 220 A.3d at 351. Maryland Rule 5-802.1(a), a codification of this Court's holding in *Nance v. State*, admits prior inconsistent statements as substantive evidence under certain circumstances. *Nance v. State*, 331 Md. 549, 569, 629 A.2d 633, 643 (1993). The proponent of the prior inconsistent statement must demonstrate its trustworthiness[5] and show an inconsistency between the prior statement and one at trial. This Court in *Nance* identified two ways an inconsistency may arise: from a positive contradiction or from a claimed lapse of memory (i.e., an implied contradiction through knowingly withholding testimony). *Id.* at 564 n.5, 629 A.2d at 640 n.5.

Wise argued that Mr. Harris's actual memory loss, unlike claimed memory loss, cannot produce an inconsistent statement given the reasoning in *Corbett v. State*. In *Corbett*, the Court of Special Appeals examined whether *actual* memory loss may produce an inconsistent statement in the same way a *claimed* memory loss presented an inconsistent statement under *Nance*. *Corbett v. State*, 130 Md. App. 408, 746 A.2d 954 (2000). The witness in *Corbett* experienced near total memory loss. It nullified her ability to answer the State's questions and to narrate events at trial. The Court of Special Appeals held *no*

---

[5] The parties do not dispute the trustworthiness of Mr. Harris's written statement to police. Maryland Rule 5-802.1(a) provides three alternative ways to satisfy the trustworthiness requirement. The prior statement must be "(1) given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding or in a deposition; (2) reduced to writing and was signed by the declarant; or (3) recorded in substantially verbatim fashion by stenographic or electronic means contemporaneously with the making of the statement[.]" Md. Rule 5-802.1(a).

*inconsistency* existed between the witness's prior written statement given to police and her monosyllabic testimony at trial.[6] *Id.* at 425, 746 A.2d at 963. Wise analogized Mr. Harris's memory loss to that of the witness in *Corbett.* Mr. Harris suffered actual memory loss that inhibited his ability to recollect at trial the events depicted in his previous written statement. Since Mr. Harris truthfully testified about his memory loss, the circuit court erred in admitting the prior written statement under *Corbett*'s reasoning.

The Court of Special Appeals rejected Wise's argument and distinguished the facts here from *Corbett.* In *Corbett*, the witness could not recall the incident other than stating "[s]omething just happened." *Wise*, 243 Md. App. at 270, 220 A.3d at 349. The witness neither provided contradictory testimony, nor displayed the *ability* to testify. *Corbett*, 130 Md. App. at 426, 746 A.2d at 963. Thus, the jury lacked a basis to compare the trial testimony to the prior written statement, let alone identify any inconsistencies. Mr. Harris, on the other hand, provided a contradictory narrative at trial. He claimed he heard shots, not from his bedroom, but from a bar down the street. He no longer remembered fleeing suspects, but rather recalled returning to his house to see police already out front. "Comparison of these statements evinces a patent and material inconsistency[.]" *Wise*, 243 Md. App. at 270, 220 A.3d at 349. The Court of Special Appeals held that Mr. Harris's conflicting testimony presented a positive contradiction under *Nance*. *Id.* at 272, 220 A.3d at 350.

---

[6] In *Corbett*, the Court of Special Appeals reversed the circuit court because it never made a preliminary finding as to whether the witness suffered from actual memory loss or feigned memory loss. *Corbett*, 130 Md. App. at 426-27, 746 A.2d at 963.

Wise alternatively argued that Mr. Harris's testimony did not amount to a positive contradiction because he never expressly recanted or repudiated his earlier written statement. The Court of Special Appeals rejected Wise's stringent interpretation of positive contradiction. Instead, "if a witness tells a story that is impossible to square factually with a prior statement he or she has given, that is enough to satisfy the *Nance* rule." *Id.* at 271, 220 A.3d at 349. Mr. Harris provided two impossible to square accounts of Mr. Thomas's shooting. Initially, Mr. Harris heard gunshots from his bedroom and then saw two men flee the scene on bicycles. At trial, Mr. Harris heard gunshots from a bar down the street and arrived at his house to find police already at the scene. These two conflicting versions of events presented a cognizable positive contradiction under *Nance*.

The Court of Special Appeals qualified its holding with a materiality requirement. Proponents may not use "the slightest contradiction between a prior statement and the trial testimony [to permit] wholesale admission of the prior statement as a hearsay exception[.]" *Id.* at 271, 220 A.3d at 350-51. The Court illustrated its materiality requirement with a hypothetical. If Mr. Harris testified to a slightly different detail (watching *Dracula* instead of *Blade II*), the State could not admit the prior statement predicated on a trivial inconsistency between the two statements. *Id.* at 272, 220 A.3d at 350.

The Court of Special Appeals observed that Mr. Harris did not merely alter peripheral details between his prior written statement and his trial testimony. His trial testimony contradicted the most important fact in the State's case: the eyewitness identification of the murder suspect. While Mr. Harris never specifically renounced his

9

prior identification, his statement at trial made such an identification impossible.  He could not have observed the suspects firsthand because he heard gunshots from inside a bar.  He could not have seen the suspects fleeing because he remembered police *already* at the scene by the time he returned home.  *Wise*, 243 Md. App. at 272, 220 A.3d at 350.

Wise sought and we granted *certiorari* to review whether the circuit court properly admitted Mr. Harris's written description as a prior inconsistent statement under *Nance* and Md. Rule 5-802.1(a).

## DISCUSSION

### Standard of Review

This Court ordinarily reviews admissibility of evidence under an abuse of discretion standard.  *Hopkins v. State*, 352 Md. 146, 158, 721 A.2d 231, 237 (1998).  Maryland rules of evidence, however, cabin the admission of hearsay to limited exceptions.  *See* Md. Rule 5-802 ("Except as otherwise provided by these rules or permitted by applicable constitutional provisions or statutes, hearsay is not admissible.").  Whether evidence qualifies for a hearsay exception presents a question of law for the circuit court.  This Court reviews questions of law without deference.  *Bernadyn v. State*, 390 Md. 1, 7-8, 887 A.2d 602, 606 (2005) ("Whether evidence is hearsay is an issue of law reviewed *de novo*.").  When circuit courts make factual findings in support of their legal conclusions, this Court cannot disturb such factual findings absent clear error.  *Gordon v. State*, 431 Md. 527, 538, 66 A.3d 647, 653 (2013).

## Contentions of the Parties

Wise argues the circuit court erred by admitting the photo array and Mr. Harris's written statement contained thereon. According to Wise, Maryland law only allows two categories of prior inconsistent evidence: positive contradiction and feigned memory loss.[7] Since actual memory loss falls outside both of these categories, it cannot form the basis for a prior inconsistent statement. *See Corbett*, 130 Md. App. at 425-26, 746 A.2d at 963 (holding prior inconsistent statement exception not satisfied when witness cannot remember events described in pretrial statement).

Wise cites *Stewart v. State* to define positive contradiction as a refutation, recantation, or express change to key parts of a witness's observations. *Stewart v. State*, 342 Md. 230, 235, 674 A.2d 944, 947 (1996).[8] Mr. Harris never recanted, withdrew, or expressly changed his testimony, so the State cannot admit the previous written statement as a positive contradiction. To show a positive contradiction, Mr. Harris would have needed to testify that Wise did not commit the assault and shooting.

---

[7] This Court also described claimed lack of memory as an "implied inconsistency." *Nance*, 331 Md. at 564 n.5, 629 A.2d at 640 n.5 (citing *People v. Johnson*, 3 Cal. 4th 1183, 14 Cal. Rptr. 2d 702, 719, 842 P.2d 1, 18 (1992)).

[8] Wise derives his definition from the text of the opinion; however, this Court in *Stewart* never used the term "positive contradiction," let alone defined it. This Court held when a prior statement "was clearly inconsistent with [the witness's] trial testimony," it satisfies *Nance*'s inconsistency requirement. *Stewart*, 342 Md. at 239, 674 A.2d at 949. Wise reads into *Stewart* a requirement for positive contradiction not supported by the text of the opinion.

11

Wise relies on *Nance* to argue the only other admissible form of prior inconsistent statement comes from feigned memory loss. This limited exception only seeks to thwart "turncoat" witnesses and their attempts to avoid speaking truthfully at trial. Wise uses *Corbett* to distinguish between feigned memory loss and actual memory loss. A feigned memory loss creates inconsistency through omission. *Corbett*, 130 Md. App. at 421, 746 A.2d at 960 ("When a witness's claim of lack of memory amounts to deliberate evasion, inconsistency is implied.") (quoting *Nance*, 331 Md. at 564, n.5, 629 A.2d at 640, n.5) (emphasis omitted). A genuine memory loss presents no basis to contradict or subvert the previous statement. Both parties acknowledge Mr. Harris's genuine memory loss, and according to the circuit court, Mr. Harris "lacks specific memories as to the events." During his testimony, he did not recall or reiterate the salient facts contained within the prior written statement, so *Corbett* must apply. For Wise, *Corbett* categorically excludes actual memory loss as an admissible basis for prior inconsistent statements.

Wise also argues the Court of Special Appeals' "materiality" requirement contravenes *Nance* because it adds a third ground for admitting prior inconsistent statements. *Stewart*, 342 Md. at 233, 674 A.2d at 946 (holding "that prior inconsistent statements are admissible as substantive evidence, provided they fall within the circumscribed limitations discussed in *Nance v. State*[.]") (internal citations omitted). Alternatively, if "materiality" describes a threshold requirement for contradictions, it impermissibly dilutes the exception under this Court's case law. Past cases required a "clear," "unequivocal," or "positive" contradiction, akin to an express recantation of a prior

12

statement. Wise asserts that material contradictions, on the other hand, confer a more forgiving standard in which proponents may show prior inconsistencies through mere inference.

The State argues the Court of Special Appeals correctly affirmed the circuit court's decision to admit Mr. Harris's written description through the prior inconsistent statement hearsay exception. Mr. Harris's testimony at trial presents a positive contradiction under *Nance* because he articulated an irreconcilable narrative of events from what he previously described in his written statement to police. Mr. Harris testified he heard gunshots from the bar down the street, while his written statement recounted that he heard gunshots from his bedroom and saw two men fleeing the scene. This Court need not inquire into the reason for the inconsistency and may treat actual memory loss in the same way as feigned memory loss. When a witness testifies to a contradictory version of events, whether through conflation, omission, or some other reason, it qualifies as a positive contradiction. The reason for the inconsistency is irrelevant. *See McClain v. State*, 425 Md. 238, 252, 40 A.3d 396, 404 (2012) (holding "the 'cold record' itself," not the underlying reason, determines an inconsistency). Maryland Rule 5-802.1 admits prior inconsistent statements, regardless of the reason for inconsistency, so juries may evaluate the truthfulness and credibility of conflicting witness testimony. *Id.* at 250, 40 A.3d at 403 ("When a jury is presented with such conflicting testimony from a single witness, courts cannot speculate as to which side of the contradiction the jury will assign greater credibility . . . 'what

evidence to believe, what weight to be given it, and what facts flow from that evidence are

for the jury . . . to determine[.]'") (internal citations omitted).

The State further argues the Court of Special Appeals' "materiality" requirement

neither created a new test nor diluted the standard to admit hearsay under the prior

inconsistent statement exception.  The materiality requirement prevents the use of *de

minimis* contradictions to admit an entire prior statement.  Minor, peripheral, or immaterial

contradictions should not allow wholesale admission of otherwise consistent statements.

If anything, the Court of Special Appeals' gloss restricts the hearsay exception in Wise's

favor by excluding prior statements containing only trivial inconsistencies.

<b>Prior Inconsistent Statement</b>

**A.     The Court of Special Appeals correctly affirmed the admission of Mr. Harris's prior inconsistent statement given Mr. Harris's contradictory testimony at trial.**

Maryland Rule 5-802.1(a) expresses the requirements for admitting prior

inconsistent statements at trial:

> The following statements previously made by a witness who testifies at the
> trial or hearing and who is subject to cross-examination concerning the
> statement are not excluded by the hearsay rule: (a) *A statement that is
> inconsistent with the declarant's testimony*, if the statement was (1) given
> under oath subject to the penalty of perjury at trial, hearing, or other
> proceeding or in a deposition; (2) reduced to writing and was signed by the
> declarant; or (3) recorded in substantially verbatim fashion by stenographic
> or electronic means contemporaneously with the making of the statement[.]

(Emphasis added).  Mr. Harris provided his testimony under oath, at trial, and subject to

cross-examination.  His signed, dated, and handwritten statement on the back of the photo

14

array satisfies one of the rule's three disjunctive requirements for trustworthiness.[9] We therefore limit our review to the emphasized portion of the rule, whether Mr. Harris's written statement to police "is inconsistent" with his trial testimony.

1. Prior inconsistent statements may arise from actual memory loss under *Nance*.

We suggested in *Nance* two circumstances to show an "inconsistent" statement: positive contradiction and feigned memory loss. *Nance*, 331 Md. at 564 n.5, 629 A.2d at 640 n.5 ("Inconsistency includes both positive contradictions and claimed lapses of memory."). The Court added this interpretation of "inconsistency" in a footnote and cited to a case from a sister jurisdiction. *State v. Devlin*, 251 Mont. 278, 282, 825 P.2d 185, 187 (1991) (holding inconsistency under Montana Rules of Evidence includes both positive contradictions and claimed lapses of memory). Wise argues that this footnote excludes actual memory loss as a basis of showing inconsistency.

The text and context of footnote five in *Nance* does not support this conclusion. It uses inclusionary language to disabuse overly narrow readings of inconsistency, because this Court wished to emphasize the broader definition of inconsistent statements beyond obvious, articulated ones at trial. The facts in *Nance* explain why. The witnesses in *Nance* "provided full, descriptive answers[]" in signed, written statements to police. *Nance*, 331 Md. at 569, 629 A.2d at 643. The witnesses then feigned memory loss at trial to avoid repeating their incriminating statements. Footnote five clarified that contrived attempts to

---

[9] Detective Burns also testified that both he and Detective Ellsworth witnessed Mr. Harris write the statement on the back of the photo array.

15

circumvent the definition of "inconsistent" will not succeed. An implied contradiction may arise from the words a witness does not say. Footnote five does not exclude actual memory loss as a potential basis for showing inconsistency. If anything, it rebukes efforts to bypass the prior inconsistent statement exception through technicality.

Footnote five did not have to contemplate the issue of actual memory loss because the body of the *Nance* opinion already signaled how actual memory loss may produce inconsistent statements. It cited to *Bedford v. State*, which expressly approved of the type of facts at issue in the context of extrajudicial identifications:

> The failure of the witness to repeat the extrajudicial identification in court does not destroy its probative value, *for such failure may be explained by loss of memory or other circumstances*. The extrajudicial identification tends to connect the defendant with the crime, and the principal danger of admitting hearsay evidence is not present since the witness is available at the trial for cross-examination.

*Bedford v. State*, 293 Md. 172, 178, 443 A.2d 78, 81 (1982) (emphasis added). This Court employed *Bedford*'s reasoning to expand the admissibility of prior statements from just extrajudicial identifications to their entire substantive content. *Nance*, 331 Md. at 564-65, 629 A.2d at 641 ("[T]he witnesses' photographic identifications were so closely related to their statements bearing on identification, and these, in turn, were so tightly intertwined with their statements as a whole, that it is useful to analyze the substantive admissibility of prior inconsistent statements generally.").

It follows that witnesses under *Nance* need not repeat the extrajudicial statement in court because the failure to repeat the statement *may be explained by loss of memory or other circumstances*. Mr. Harris failed to repeat his extrajudicial statement because a

16

severe brain injury damaged his recollection of events. If feigned memory loss may produce an implied contradiction from what the witness does *not* say, then actual memory loss may produce a positive contradiction from what the witness *does* say. Wise misinterprets what constitutes an inconsistency under *Nance*.[10] We conclude an inconsistent statement may arise from memory loss or any other reason.

Wise's interpretation also leads to absurd and unjust results under Md. Rule 5-802.1(a). *See Barbre v. Pope*, 402 Md. 157, 172, 935 A.2d 699, 708 (2007) ("Further,

---

[10] The Court of Special Appeals, in an opinion written by Judge Charles E. Moylan, Jr., rejected Wise's argument that actual memory loss precludes inconsistency in *Makell v. State*:

> Neither the *Nance* opinion specifically nor the mainstream of American law that *Nance* deliberately joined *care one whit why the testimonial inconstancy comes about*. It may be through fear or intimidation. It may be for love or affection. It may be for cold hard cash. *It may be because of loss of memory, partial or total, genuine or perjurious*, as a result of drugs, alcohol, amnesia, senility, mental retardation, the mere passage of time, or *for any other reason*. It may be out of sheer perversity. It may be for no reason at all. It may be for reasons unknown. *The law's only concern is with what happens in this regard, not with why it happens*.

*Makell v. State*, 104 Md. App. 334, 345, 656 A.2d 348, 353 (1995) (emphasis added and in original). Wise argues *Corbett*'s more recent vintage supersedes the reasoning from *Makell*. This attempt to distinguish away *Makell* fails because both Mr. Harris's testimony and the turncoat witness's testimony in *Makell* offered a substantively different version of events at trial. *Id.* at 339, 656 A. 2d at 350 ("It goes without saying that [the witness's] trial testimony was significantly inconsistent with his pretrial declarations."). Changed testimony controls the finding of inconsistency, whether induced by actual memory loss, feigned memory loss, or any other reason. The Court of Special Appeals so held in a case decided *after Corbett*, which also defeats Wise's later-in-time argument. *Adams v. State*, 165 Md. App. 352, 368, 885 A.2d 833, 842 (2005) ("Why [the witness] changed his position . . . is, of course, not controlling. It is the change itself that triggers the rule of *Nance* and of Rule 5-802.1(a).") (citation omitted).

whenever possible, an interpretation should be given to the statutory provisions which does not lead to absurd consequences."). As both parties acknowledge, Mr. Harris sustained brain damage and memory loss from an unrelated armed robbery. Imagine, however, if Mr. Harris sustained brain damage and memory loss *because* someone tried to silence him. Wise's interpretation of an inconsistent statement, as codified in Md. Rule 5-802.1(a), would deny the admission of prior inconsistent statements even if a bad actor succeeded in causing actual memory loss. This interpretation incentivizes harming witnesses to avoid admission of previous statements.[11] Recognizing actual memory loss as a basis for prior inconsistent statements avoids these absurd and unjust results under Md. Rule 5-802.1(a).

2. *Corbett* described circumstances where pure memory loss may prevent inconsistencies.

On the other hand, pure memory loss does not form the basis of a prior inconsistent statement under *Nance* or Md. Rule 5-802.1(a) when it prevents the witness from *providing any contradictory testimony at all*. "[W]hen a witness truthfully testifies that he does not remember an event, that testimony is not 'inconsistent' with his prior written statement about the event, within the meaning of Rule 5-802.1(a)." *Corbett*, 130 Md. App. at 425, 746 A.2d at 963. The Court of Special Appeals in *Corbett* could not characterize the

---

[11] This perverse outcome also circumvents admission under Md. Code, Courts and Judicial Proceedings ("Cts. & Jud. Proc.") § 10-901(a) which applies only to declarants made *unavailable* by wrongdoing. Cts. & Jud. Proc. § 10-901(a) ("a statement as defined in [Md.] Rule 5-801(a) is not excluded by the hearsay rule if the statement is offered against a party that has engaged in, directed, or conspired to commit wrongdoing that was intended to and *did procure the unavailability* of the declarant of the statement, as defined in [Md.] Rule 5-804.") (emphasis added).

18

witness's actual memory loss as an inconsistency because the extensive memory loss, in that instance, prevented a twelve-year-old witness from recalling the statement made to police following an attempted statutory rape. Her prior written statement detailed how her mother's boyfriend attempted sexual intercourse while she slept. During trial, the prosecutor asked the witness questions about what happened, but she could not remember the alleged incident:

> [Prosecutor]: Okay. What can you tell me about what you remember that morning?
>
> [Witness]: I remember waking up and running to the phone, calling my mother.
>
> ***
>
> [Prosecutor]: And what was that reason?
>
> [Witness]: Something just happened.
>
> [Prosecutor]: Can you tell me what had just happened?
>
> [Witness]: I don't remember.
>
> [Prosecutor]: You don't remember?
>
> [Witness]: No.

*Id.* at 413, 746 A.2d at 956.

The prosecutor tried to jog the witness's memory, but the witness could only add a few, ancillary details like, "I was screaming for my mother[,]" *Id.* at 415, 746 A.2d at 958. She also stated that her mother "h[eld her] in her arms[.]" *Id*. at 412, 746 A.2d at 956. The witness's scant testimony did not identify who perpetrated the attempted rape, let alone suggest whether a rape occurred at all. Accordingly, the Court of Special Appeals reversed

19

the circuit court because the record showed no positive contradiction between her written statement to the police and her subsequent trial testimony. *Id.* at 426, 746 A.2d at 963 (holding a witness "truly devoid of memory of an event lacks the *ability* to testify fully and accurately about it, not the willingness to do so"). The circuit court never made a finding as to whether the witness presented actual or feigned memory loss, so the statement could not qualify as an implied contradiction either. *Id.* at 426-27, 746 A.2d at 963.[12]

Unlike the witness in *Corbett* whose inability to remember salient details of an alleged incident precluded *any* contradictory statements, Mr. Harris provided a complete but inconsistent version of events leading up to Mr. Thomas' death:

> Well that day [Mr. Thomas] got killed, I was, I was already going down, like I said, I was going down to the bar. So I went down there, I went down there to get me something, I don't remember what I went and got, but I went down the bar and got me something and that's when I heard the shots, the police was all up there in front of my house.

This statement plainly contradicted Mr. Harris's prior written statement that, *while in his bedroom*, he heard gunshots and then saw two fleeing individuals. The prosecutor noticed the apparent contradiction and attempted to clarify Mr. Harris's statement. Mr. Harris maintained the contradictory story: "No. That night when the shooting occurred, I was already down at the bar, I was down this way. I wasn't up where I lived at."

---

[12] The Court of Special Appeals explained that if the witness truly lacked memory and the ability to testify, the witness could still *read* the prior statement into evidence under the "past recollection recorded" hearsay exception codified in Md. Rule 5-802.1(e). *Corbett*, 130 App. at 427, 746 A.2d at 964.

Juxtapose this confidence and completeness in Mr. Harris's answers to the witness in *Corbett* who could not (or chose not) to provide substantial details about the incident. Mr. Harris provided a detailed though contradictory description of events for the jury to evaluate and reconcile. The witness in *Corbett* provided no substantive testimony, let alone conflicting testimony, for the jury to evaluate or reconcile. Mr. Harris's affirmative, detailed, but contradictory statements distinguish this case from *Corbett*. His trial testimony conflicted with his prior written testimony. Maryland law does not inquire further into the reason for a witness's inconsistent statement at trial. "It is the change itself that triggers the rule of *Nance* and of Rule 5-802.1(a)." *Adams v. State*, 165 Md. App. 352, 368, 885 A.2d 833, 842 (2005). We agree with the Court of Special Appeals and hold a positive contradiction arising from actual memory loss qualifies as an admissible prior inconsistent statement under Md. Rule 5-802.1(a).

**B.    COSA's materiality requirement conforms with Maryland case law and protects the circumscribed limits of Md. Rule 5-802.1(a).**

Maryland law permits prior inconsistent statements as an exception to the hearsay rule, "provided they fall within the circumscribed limitations discussed in *Nance v State*[.]" *Stewart v. State*, 342 Md. 230, 233, 674 A.2d 944, 946 (1996). Contrary to Wise's assertion, the Court of Special Appeals' materiality requirement protects the circumscribed limitation to the hearsay rule. It ensures only prior inconsistent statements with sufficient substance and probative value qualify for the hearsay exception enumerated in *Nance* and codified in Md. Rule 5-802.1(a).

1. <u>Materiality strengthens not widens *Nance*'s "circumscribed limitations."</u>

*Nance*'s reasoning principally concerned why the Court should break with its precedent and admit prior inconsistent statements as substantive evidence. *Nance*, 331 Md. at 569, 629 A.2d at 643 ("We hold that the factual portion of an inconsistent out-of-court statement is sufficiently trustworthy to be offered as substantive evidence of guilt when . . . reduced to writing and signed or otherwise adopted by [the declarant], and [the declarant] is subject to cross-examination . . . our opinion in *Mouzone v. State* is overruled.") (footnote and internal citations omitted). *Nance*, however, did not open the door to all prior inconsistent statements. It limited the admission of prior inconsistent statements to only those of substance and probative value. *Id.* at 569, 629 A.2d at 643. A materiality requirement reinforces *Nance*'s limitations because it excludes prior inconsistent statements bereft of legally significant or dispositive facts. It does not, as Wise suggests, create a new route to admit prior inconsistent statements.

Before *Nance*, Maryland's common law hearsay rule only permitted prior inconsistent statements for impeachment purposes. *Nance* expanded the exception to also admit prior inconsistent statements as substantive evidence. This Court reached its conclusion through surveying our sister jurisdictions and leading authorities. *Id.* at 565-66, 629 A.2d at 641 (citing Charles T. McCormick, *The Turncoat Witness: Previous Statements as Substantive Evidence*, 25 Tex. L. Rev. 573, 577 (1947)) (quoting 3A Wigmore, *Evidence*, § 1018(b) (Chadbourn rev. 1970, 1991 Supp.)) ("because purpose of hearsay rule is satisfied when witness is present and subject to cross-examination, former

22

extrajudicial statement should be granted substantive value"); *Di Carlo v. United States*, 6 F.2d 364, 368 (2d Cir. 1925) (acknowledging juries' ability to evaluate the truthfulness of past and current statements in court); 2 McCormick on Evidence, § 251, at 119 (4th ed. 1992) (observing the introduction of an earlier statement provides a fresher, and more likely complete and accurate account); *see also Shepherd v. United States*, 290 U.S. 96, 104, 54 S. Ct. 22, 25 (1933) (eliminating the need for limiting instructions delineating between impeachment and substantive evidence as "a feat beyond the compass of ordinary minds").

These authorities encapsulate the main concern animating *Nance*'s "circumscribed limitations": bringing sufficiently trustworthy and probative prior inconsistent statements before a jury. Only with relevant and reliable prior inconsistent statements could fact finders fairly evaluate the truth of both the extrajudicial and judicial statements in real time. *See Nance*, 331 Md. at 569, 629 A.2d at 643 ("The witnesses were present at trial for cross-examination and thus *available to explain, if they could*, the inconsistencies between their trial testimony and the prior statements.") (emphasis added); *see also* Fed. R. Evid. 801(a)(d)(1)(A) advisory committee's note (explaining the equivalent federal rule enables "thorough exploration of both versions while the witness is on the stand"). Materiality advances this goal by preventing juries from wasting time comparing collateral facts. We agree with the Court of Special Appeals that a prior inconsistent statement must present a material contradiction to be admitted under *Nance* and Md. Rule 5-802.1(a).

The materiality requirement also fills a gap in our precedent. Neither *Nance* nor its progeny explained *to what extent* a prior statement must differ from trial testimony to constitute an "inconsistency."[13] The issue never arose in *Nance*'s legal and factual analysis. The legal analysis omitted discussion of materiality because it focused on the larger issue of whether Maryland should admit prior inconsistent statements as substantive evidence. The factual analysis omitted discussion of materiality because of the obvious and dispositive inconsistency between the witnesses' prior statements and trial testimony. The witnesses in *Nance* initially identified the murder suspects in written statements to police, only to disavow the identifications at trial. *Nance*, 331 Md. at 556, 629 A.2d at 636. With such a decisive reversal between the prior statement and trial testimony, this Court needed not broach the issue of materiality.

In *Stewart*, we admitted a prior written statement "*clearly* inconsistent with [the witness's] trial testimony[]" when the witness initially wrote his identification of a suspect on the back of a photo array and then later testified to a different suspect. *Stewart*, 342 Md. at 239, 674 A.2d at 949 (emphasis added). Wise argues this Court's adverbial addition of "clearly" shows a "high[er] level" of contradiction needed than just a material inconsistency. We never intimated such a standard, rather the inconsistency proved too self-evident for elaboration as in *Nance*. The witness wrote on the back of a photo array, "I'm positive that he was the one that shot [the victim]." At trial, the witness denied

---

[13] In these instances, the question of what constitutes an inconsistency fell into the "I know it when I see it[]" analytical canon. *See Jacobellis v. State of Ohio*, 378 U.S. 184, 197, 84 S. Ct. 1676, 1683 (1964) (Stewart, J., concurring).

knowing who killed the victim. *Id.* at 239, 674 A.2d at 949. The issue of materiality, as in *Nance*, did not arise because the facts obviously showed inconsistency.

The Court of Special Appeals also routinely recognized inconsistencies without elaboration. In *Makell*, a turncoat witness's unexpected repudiation of his prior statement prompted the Court of Special Appeals to note, "[i]t goes without saying that [the witness's] trial testimony was significantly inconsistent with his pretrial declarations." *Makell*, 104 Md. App. at 339, 656 A.2d at 350. Similarly in *Adams*, the court observed how the witness "unequivocally identified" the defendant in a detailed, ten-page recorded statement to police, but then testified at trial that he could not identify the perpetrator because he wore a mask. *Adams*, 165 Md. App. at 366, 885 A.2d at 841. The appellate court's use of the modifier "unequivocally," once again, spoke to how uncontroverted the inconsistency appears in the record. The issue of materiality never arose from the facts. The witness's unmistakable about-face satisfied the prior inconsistent statement exception without any further discussion.

Because *Nance* and its progeny involved such obvious inconsistencies, they never warranted an explanation of the *minimum showing necessary* to establish an inconsistency. Recognizing materiality as a minimum requirement for an inconsistent statement does not contravene the *Nance* line of cases. It merely identifies an admissible floor of inconsistent

25

statements that the previous cases easily surpassed. Just because past cases easily satisfied the legal test, does not mean all subsequent cases must clear the test by the same margin.[14]

Even if we accepted Wise's argument that positive contradictions require the most stringent level of inconsistency, the Court of Special Appeals' holding would still meet that test. "What we do say on this record is that, if a witness tells a story that is *impossible* to square factually with a prior statement he or she has given, that is enough to satisfy the *Nance* rule." *Wise*, 243 Md. App. at 272, 220 A.3d at 349. The Court's holding leaves no room for ambiguity about the severity of contradiction needed to admit a prior inconsistent statement.[15]

If anything, the Court of Special Appeals' "material inconsistency" language constricts the hearsay exception in Wise's favor, because it prevents the admission of entire prior inconsistent statements predicated on inconsequential details. The material

---

[14] Take *Adams* as an example. The witness provided a ten-page transcript of detailed description of the defendant, only to avoid speaking truthfully at trial. The Court of Special Appeals recognized the witness's stark about-face as an inconsistency without elaboration. *Adams*, 165 Md. App. at 366, 885 A.2d at 841. According to Wise's argument, all prior inconsistent statements would need to show the same magnitude of inconsistency. This argument proves unrealistic in practice. Any number of less extreme examples of contradiction would still logically satisfy the meaning of inconsistent statement.

[15] Wise argues that a positive contradiction still requires something more than impossibility. Mr. Harris would need to have said something like, "my written statement to police contains factual inaccuracies. I did not hear gunshots from my bedroom. I heard them from a bar and therefore I did not see anyone involved in the shooting." Neither case law nor *Nance*'s reasoning supports Wise's strict interpretation of what constitutes a positive contradiction. We also agree with the Court of Special Appeals that the "rigidity inherent in Wise's interpretation would make the application of the *Nance* rule nearly impossible." *See Wise*, 243 Md. App. at 271, 220 A.3d at 349.

26

inconsistency requirement also conforms with *Corbett* in which the witness testified to minor details, like "I was screaming for my mother[,]" but neither testified to the identity of the perpetrator nor to what allegedly occurred. *Corbett*, 130 Md. App. at 415, 746 A.2d at 957. The Court of Special Appeals characterized these details as "events peripheral to the allegations against [the defendant]." *Id.* at 412, 746 A.2d at 956. Despite the possibility of contradiction, the Court seemed disinclined to use these ancillary details as a basis to admit the entire written statement to police under the prior inconsistent statement exception. The Court instead focused on whether the witness testified inconsistently to the "central" events. *Id.* at 427, 746 A.2d at 964.

Mr. Harris also correctly testified to ancillary details like his friendship with Mr. Thomas and his interview with detectives Burns and Ellsworth. These peripheral details alone would not amount to a positive contradiction. Mr. Harris's statement became a positive contradiction, unlike the testimony of the witness in *Corbett*, when he expounded inconsistently on his recollection of events that led to Mr. Thomas's murder.

2. <u>Mr. Harris's testimony demonstrates a positive, material contradiction.</u>

Mr. Harris's testimony presents both an "impossible to square" and materially inconsistent version of events compared to his prior written statement. Mr. Harris's written statement described hearing gunshots and seeing the murder suspects flee from his house. His trial testimony described hearing gunshots from a bar down the street. He added, "I didn't even know anybody got shot until somebody had told me out there on the front [of the house]." In his written statement to police, Mr. Harris was in his home when he saw

27

two people flee the scene after the shooting. In his statement at trial, he never saw, nor could have seen the perpetrators because of his location inside a bar. His trial testimony positively contradicted his prior written statement.

The inconsistency between Mr. Harris's trial testimony and written statement also concerned a material issue at trial: whether Mr. Harris identified Wise as "one of the guys involved in the shooting of [Mr. Thomas]." As Wise emphasizes in his brief, the State's case hinged on Mr. Harris's eyewitness identification of Wise. Mr. Harris "immediately identified" Wise's picture in a police photo array approximately one month after Mr. Thomas's murder. He made this identification based on two different observations that occurred hours before and immediately following the shooting. Mr. Harris first saw Wise engaged in an argument with Mr. Thomas on Mr. Harris's front porch. Mr. Harris recognized Wise's distinct "Rick Ross [l]ook[.]" When Mr. Thomas began pushing Mr. Harris inside the rowhome, Mr. Harris turned to see Wise and another man brandishing their pistols. Then, hours later, Mr. Harris heard gunshots from his bedroom and ran to his front window to see from behind two men fleeing the scene.

Mr. Harris's trial testimony upended the identification by claiming he never saw anyone fleeing from his house at all. Nor could Mr. Harris have seen anyone fleeing his house, because he claimed to have heard the gunshots from inside a nearby bar. He returned home to find police already outside. His trial statement subverted his previous statement to police because it narrated a sequence of events in which he never saw, nor could have seen Wise involved in Mr. Thomas's murder.

28

**CONCLUSION**

For the reasons explained, we affirm the judgment of the Court of Special Appeals. Mr. Harris's testimony at trial positively and materially contradicted his written statement to the police. The statement was correctly admitted under the prior inconsistent statement exception to the hearsay rule under *Nance*, 331 Md. at 569, 629 A.2d at 643, and Md. Rule 5-802.1(a).

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**